## Payne, Director General of Railroads v. Blondell.

(Decided March 24, 1925.)

### Appeal from Bell Circuit Court.

Master and Servant—Risk of Injury by Gas in Tunnel Held Assumed by Railway Carpenter.—Railway carpenter engaged in testing timbers in tunnels who sustained an injury to his respiratory organs from smoke and gas emitted by train in passing through tunnel held to have assumed risk.

LOW & BRYANT and WOODWARD, WARFIELD & DAWSON for appellant.

E. F. BAKER and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

On October 28, 1918, while the Louisville & Nashville Railroad Company was in the hands of appellant, John Barton Payne, Director General of Railroads, appellee, J. C. Blondell, an employee of the railroad company, claims to have received an injury as a result of the negligence of appellant and his agents which permanently

injured him.    He sued to recover damages for the injury.    By answer appellant denied that the injury was the result of any negligence of himself or his agents and affirmatively pleaded contributory negligence and assumed risk.    The latter pleas were controverted by appellee, and on the issues thus made, a trial before a jury in the Bell circuit court resulted in a verdict for appellee for $7,000.00.    The trial court overruled appellant's motion for a new trial, and this appeal has been prosecuted.

The facts are these: On the date mentioned appellee was a member of a crew of carpenters engaged in tunnel inspecting.    They were using a motor-propelled car on which there was erected a scaffold, and the workmen from the scaffold were testing the timbers in a tunnel by boring holes with augers.    By so doing it could be determined whether or not the timbers were sound.    At some time during the day, in order to permit a freight train to pass, the car being used by the tunnel crew was run from the tunnel and removed from the track.    The train passed.    According to the evidence for appelle it was a "light freight train."    The evidence for appellant tends to establish that it was merely an engine and tender. After the train passed the car containing the scaffold was replaced on the track and the crew went back into the tunnel to continue work.    Appellee testified that shortly after returning to work in the tunnel the smoke and gases that had been emitted by the passing engine brought on him a fit of violent coughing, but that he continued to work, and that the smoke did not fully clear from the tunnel for something like three-quarters of an hour after the train passed.    He claims that by working under those conditions his respiratory organs were seriously injured and that as a result he is now unable to labor at all. From his testimony it appears that he laid off from work about two days following the injury and then returned to and continued to work for appellant until about the first of June following.    He was then confined to his bed for some two or three months and has been unable since to engage in labor, all of which he attributes to the three-quarters of an hour's labor in the smoke while working in the tunnel.

It appears that the crew with which appellee was working consisted of himself and some four or five other men and a foreman.    It is made to appear for him that the foreman led the men into the tunnel after the train had passed and remained with them while the smoke and

gases were in the tunnel. Neither the foreman nor any other member of the crew appears to have been affected by the smoke and gases, although they were engaged in the same kind of work, under the same conditions.

The theory upon which appellee claims to have manifested a right to recover herein is that appellant was negligent in not furnishing him a reasonably safe place in which to work.

It is insisted for appellant that no negligence upon its part has been shown and that appellee's injury, if any, was merely the result of the ordinary risks and dangers growing out of and which are usually incident to the work for which he was employed, and that upon accepting the employment and engaging in the work he assumed the risk. It is hard to point out any negligence upon the part of appellant or any of his agents in this case. It certainly was not negligence to operate a railroad train through the tunnel, because that was the purpose for which the tunnel was constructed. It was not negligence to permit the engine to emit smoke and gas into the tunnel because no way has yet been devised by which a steam railroad locomotive can be operated without emitting smoke and gas. It was not negligence for the railroad company to have the timbers supporting the roof and sides of the tunnel tested because that is necessary to insure the safety of the trains and their cargoes, both passengers and freight. We do not understand how that the work of inspection of tunnels could be performed in the absence of the conditions under which that was done on the occasion in question, because trains passing either way necessarily must use the tracks at frequently recurring intervals. Appellee admitted that he entered the tunnel on the occasion in question of his own volition and that when the first violent fit of coughing gave him notice that the smoke was affecting him he remained, not because he was directed to do so by any of appellant's agents, but because he thought that the condition would soon wear off.

With reference to the hazards and risks of employment, in Southern Planing Mill v. Hebel, 167 Ky. 165, this court said:

"It must be remembered that there are two classes of risks: (1) Those which are not created by the master's negligence, or the ordinary risks of the service; (2) those which are created by the master's

negligence, or the extraordinary risks. The ordinary risks the servant assumes, but the extraordinary risks, or those created by the master's negligence, he does not assume, unless he knows of the defect and danger therefrom, or the defect and danger are so obvious that an ordinarily prudent person would, under the circumstances, have observed and appreciated them. C. & O. Ry. Co. v. De Atley, 159 Ky. 687.''

In the light of that principle of law, how can it be said that the risk of injury from breathing smoke while working in a tunnel is more than one of the ordinary risks of the service? Appellee was 49 years of age. He had spent many years working in different lines of railroad work. He had spent a number of years in labor as a miner. He knew on the occasion in question, as well as did the foreman of the crew, that the passing train had left smoke and gas in the tunnel. The condition was obvious. The condition existed not because of any negligence upon the part of appellant or his agents. It was for appellee to determine for himself whether or not he desired to labor in the tunnel with those conditions present. Having elected to do so, having accepted the employment to labor in the tunnel where he knew beforehand that smoke and gases emitted by passing engines would be present, and, having elected to proceed into the tunnel immediately after the passing train where the presence of the smoke and gas was discernible, both by sight and smell, in view of the fact that they were present not by any act of negligence upon the part of appellant or his agents, we can not escape the conclusion that the risk of injury from those conditions was one of the ordinary risks of the service which appellee assumed upon accepting and engaging in the employment.

Having reached that conclusion, we deem it unnecessary to discuss or determine the other questions presented by brief for appellant. At the conclusion of the evidence the trial court should have peremptorily instructed the jury to find for appellant.

For the foregoing reasons, the judgment herein is reversed and this cause remanded for further poceedings consistent herewith.