## THE PILOT.

### PHILLIPS v. THE PILOT.

#### (District Court, E. D. Pennsylvania. July 18, 1897.)

1. MASTER AND SERVANT—NEGLIGENCE—ORDINARY RISKS OF EMPLOYMENT.

A master of a tugboat who ordered one of the crew to jump ashore to attach a line, is not guilty of negligence if the latter, by reason of his being unaccustomed to jumping, received injuries in attempting to execute the master's order, where it does not appear that the master had knowledge of his inability, since a master of a tugboat is justified in assuming that a member of the crew is accustomed to all ordinary duties required of men on such vessels.

2. MASTER AND SERVANT—NEGLIGENCE—ORDINARY RISKS OF EMPLOYMENT.

In such case the master is not guilty of fault, unless the distance from the wharf was so great as to render the service unnecessarily dangerous to a man of ordinary strength and activity.

3. MASTER AND SERVANT—NEGLIGENCE—EMERGENCY.

The plaintiff, who while jumping ashore to attach a line failed to light upon the wharf, and slipping down its breast into the water was struck by the boat and injured, alleged as negligence on the part of the master his failure to keep the boat off from the wharf after the plaintiff had fallen in the water. Held, that the master was not guilty of negligence, since it appeared that he had acted in the emergency with which he was confronted in a manner which seemed best to him under the circumstances.

S. Morris Waln, for libelant.
Henry Flanders and Edward F. Pugh, for respondent.

BUTLER, District Judge. The undisputed facts are that the libelant was a member of the respondent's crew, as fireman; that on January 10, 1895, when the tug rounded to at Point Coal Piers, he attempted to jump ashore, to attach a line; that he failed to light upon the wharf, and slipped down its breast into the water, where he was struck by the boat and hurt; that the tide was strong ebb, and the wind east, driving the boat towards the wharf, although her engine had stopped. The libelant charges that he was ordered up from below and directed to jump, by the master; that he hes-

itated, but on receiving a second order, jumped; that the master did nothing to keep the boat off subsequently, although by backing he could have done so. These charges are severally denied, and the testimony respecting them is conflicting.

The case presents but two questions that need be decided: First, was the master blamable for ordering the libelant to jump, supposing he did so? Second, was he blamable for not keeping the tug off subsequently? As respects the first, the libelant was subject to be called to the duty he undertook when jumping. On such vessels the entire crew assists about whatever is to be done when required. In ordering the libelant to jump the master was not, therefore, guilty of fault unless the distance from the wharf was so great as to render the service unnecessarily dangerous, to a man of ordinary strength and activity. There is no evidence that the distance was such. The libelant puts it at five feet, which was certainly not a very long jump; and in his brief (page 1) he assigns his failure to reach the wharf safely to the fact that he is not "accustomed to jumping." The master was justified in assuming that he was accustomed to all the ordinary services required of men on such vessels. This service of jumping ashore to attach a line is required many times daily, and one member of the crew is nearly as liable to be called to its performance as another. If the libelant was deficient in capacity to jump he should at least have said so; if he had, and notwithstanding had been required to jump, the result might possibly be different. His fall into the water must be regarded, under the circumstances, as the result of unfitness for the duty he undertook, and the folly of undertaking it. But even if the distance had been greater, and the master had given the order through error of judgment (and that is the most that could be charged in such case) the order could not be regarded as a fault which would render the vessel liable. The fall into the water under such circumstances, would be an accident, incident to the employment, and contemplated by the contract. The City of Alexandria, 17 Fed. 396; Paulson v. The Governor Ames, 55 Fed. 327.

Is the master blamable for not keeping off subsequently? If he did what seemed to him best under the circumstances, he is not chargeable with negligence, although it might now seem that something else would have been better. He was confronted with an emergency, was required to think and determine what should be done with no time for deliberation and a mistake under such circumstances would be excusable. The proofs do not satisfy me, however, that he made a mistake, or could have done better than he did. Possibly an effort to back might have been better, but it seems as probable that it would have been worse. It seems improbable that an attempt to back would have been serviceable; before the engine could have affected the motion of the boat it would have been likely to strike the libelant as it did; and if its motion had been thus affected earlier it is not unlikely that the blow would have been harder.

The other allegations of fact on which the libelant depends are thus seen to be unimportant.

The libel must, therefore, be dismissed with costs.